UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SCOTT WILLIAMS and <br> SUSAN WILLIAMS, husband and wife <br><br> Plaintiffs, <br><br> v. <br><br> PHH MORTGAGE CORPORATION <br><br> Defendant. | Civil Action No. |

# COMPLAINT

## INTRODUCTION

1. This is an action for actual and statutory damages brought by Plaintiffs Scott and Susan Williams, husband and wife, (Plaintiffs) against Defendant PHH Mortgage Corporation (Defendant) based on violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, et seq., Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1, et seq. and breach of contract.

2. This suit stems from Defendant's misleading and deceptive mortgage servicing practices and its attempts to collect a mortgage debt on behalf of a third-party investor/owner of the loan.

3. As detailed more fully herein, Defendant solicited Plaintiffs' participation in the FHA's Home Affordable Modification Program and entered into a Trial Payment Plan with the Plaintiffs under the promise of a permanent modification of Plaintiffs' home mortgage to a lower interest rate. Plaintiff made all required payments and fully complied with the terms of the program; however, Defendant breached its servicing obligations and refused to honor the agreement. In the process, Defendant made false, deceptive and misleading representations to the Plaintiffs in order to obtain additional payments from them before wrongfully referring their home to foreclosure.

## JURISDICTION AND VENUE

4. Jurisdiction arises and is proper under 15 U.S.C. § 1692(k) and 28 U.S.C. §§ 1331, 1332(a) and 1367(a).
5. *In personam* jurisdiction exists and venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because the transactions and occurrences underlying this action took place in the Eastern District.

## PARTIES

6. Plaintiffs are consumers residing in their home at 340 Beech Street, Warminster, PA 18974.
7. Defendant PHH Mortgage Corporation (PHH) is a business corporation with a principal place of business at 1 Mortgage Way, Mount Laurel, NJ 08504.
8. Defendant regularly collects or attempts to collect debts owed or asserted to be owed to another and obtained the servicing rights to Plaintiffs' mortgage loan after it was allegedly in default and, therefore, is a "debt collector" as set forth in section 1692a of the FDCPA, 15 U.S.C. § 1692a.

## STATEMENT OF FACTS

9. Plaintiffs purchased their home at 340 Beech Street, Warminster, PA for use as their primary residence by deed recorded June 5, 2018 in the Bucks County Recorder of Deeds at instrument number 2018029562.
10. Plaintiffs gave a mortgage to Plaza Home Mortgage, Inc which was recorded on June 5, 2018 in the Bucks County Recorder of Deeds at instrument number 2018029563 (the "Mortgage").
11. PHH obtained the servicing rights to Plaintiffs' mortgage loan in or about 2019 after the loan was allegedly in default and the mortgage was assigned to PHH by mortgage assignment recorded on August 28, 2019 in the Bucks County Recorder of Deeds at instrument number 2019047120.
12. Shortly after receiving an assignment of the Mortgage, Defendant solicited Plaintiffs' participation in the FHA's Home Affordable Modification Program (HAMP).
13. Plaintiffs applied for HAMP, and by letter dated December 23, 2019, were notified by Defendant that their request for mortgage assistance had been approved.
14. Exhibit A is a true and correct copy of the December 23rd trial payment plan (TPP) offer mailed to Plaintiffs from Defendant.
15. Plaintiffs timely accepted the offer and made all of the trial payments required under the TPP.
16. After required TPP payments were made, Defendant advised that the permanent modification had been approved and Defendant would send Plaintiffs the permanent modification documents and Plaintiffs continued to make monthly mortgage payments to Defendant.
17. As the final modification had been approved, Defendant advised Plaintiffs to continue making modified monthly mortgage payments.

18. In or about August 2020, Defendant provided Plaintiffs with the permanent modification documentation, which included a mortgage modification along with an additional promissory note and second mortgage payable to the U.S. Department of Housing and Urban Development. A true and correct copy is attached as Exhibit B.
19. Plaintiffs timely executed, notarized and returned the permanent modification documentation to Defendant and continued to make their monthly mortgage payments as directed by Defendant.
20. On August 24, 2020, Defendant confirmed the receipt of the signed modification documents, but Defendant claimed "[t]he agreement we received is missing a co-borrower's signature or the signature is illegible."
21. Defendant's claim that the documents were "missing" a signature was false, and the documents were signed and notarized in accordance with Pennsylvania law.
22. In or about September 2020, Defendant provided Plaintiffs with another set of modification documentation and requested that it be executed and notarized.
23. Plaintiffs timely executed, notarized, and returned the second set of modification documentation as requested.
24. In or about October 2020, Defendant informed Plaintiffs that their modification had now been rejected. Defendant claimed that the modification documents had allegedly not been return in a timely manner.
25. Plaintiffs promptly spoke with Siddharth Zaveri, an employee of Defendant and the "Relationship Manager" assigned to Plaintiff's mortgage modification application.
26. Zaveri informed Plaintiffs that the executed modification had, in fact, been timely received and that Defendant's representation that the documents were not received was false.

27. Zaveri additionally stated that there was a typographical error in the original 2018 deed conveying the home to Plaintiffs. Specifically, the deed misspelled Scott Williams name as "Scott Wlliams".
28. Zaveri requested that the permanent modification be re-executed for a third time, this time he advised that Plaintiff Scott Williams should sign the modification as "Scott Williams aka Scott Wlliams".
29. Plaintiff re-executed the modification documents as directed by Zaveri a third time and promptly returned them to Defendant.
30. During this time Plaintiffs continued to make their monthly mortgage payments to Defendant. However, after Plaintiffs' conversations with Zaveri, Defendant began returning Plaintiffs' mortgage payments.
31. In or about December 2020, Zaveri advised Plaintiffs that they needed to record a new deed correcting the typographical error. Zaveri advised that if Plaintiffs recorded the corrective deed, and re-paid Defendant the mortgage payments that Defendant had returned to Plaintiffs (which totaled approximately $3,860 at this time) that the modification would be implemented.
32. Plaintiffs complied in every respect with Zaveri's instructions and executed and recorded a corrective deed, and promptly provided Defendant with the new deed. Additionally, Plaintiff re-paid the monthly mortgage payments that had been refunded, as directed by Zaveri.
33. Contrary to representations made by Defendant, none of the payments received by PHH were applied to Plaintiffs' mortgage. Instead, PHH held all of the payments (totaling approximately $15,138.62) in a separate 'suspense' account. This amount was more than enough to apply several full monthly payments to the account.

34. Defendants use of the suspense account and their refusal to apply this money to monthly mortgage payments violated the application of payments provisions of the mortgage documents and federal law.

35. In or about January 2021, Plaintiffs received notification from their credit monitoring servicing that their mortgage loan was now being reported as 180 past due with an overdue balance of $41,939. Exhibit C is an excerpt of the Plaintiff's Experian Credit report dated January 15, 2021.

36. Defendant persisted in refusing to honor the terms of the modification agreement and on January 19, 2021, Defendant sent a monthly mortgage statement to Plaintiffs now claiming a past-due balance of $46,071.02. Defendant also warned:

    **"Please note your loan has been referred to an attorney to start foreclosure proceedings. Prior to remitting payment you MUST contact the attorney for the full reinstatement amount as the amount above may have changed."**

37. According to the statement, Defendant held $11,278.62 in a suspense account, and did not apply these payments received from the Plaintiffs to their mortgage loan.

38. Additionally, Defendant assessed late fees and "assessed expenses", presumably foreclosure/deault expenses related to the loan, totaling $2,209.94.

39. These fees and expenses were illegal and improper under the mortgage documents for many reasons, which include, but are not limited to, the fact that the Plaintiffs made timely payments which were either not applied or returned to Plaintiffs, and no actual foreclosure proceedings had ever been initiated against the Williams.

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

40. Plaintiffs incorporate the preceding paragraphs as though set forth at length herein.

41. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantages, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); see also Hamilton v. United Healthcare of La., Inc. 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

42. The FDCPA is designed to be enforced primarily through private parties acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("[t]he committee views this legislation as primarily self enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

43. PHH's actions in this case constitute attempts to collect a debt within the ambit of the FDCPA.

44. PHH violated Sections 1692e and 1692f of the FDCPA. By way of example and not limitation, Defendant violated the FDCPA by using false, misleading or deceptive representations or means in connection with the collection of a

debt; falsely representing the character, amount or legal status of the debt; threatening to take action which cannot legally be taken; the use of any false representation or deceptive means to collect or attempt to collect any debt; the use of unfair or unconscionable means to collect or attempt to collect any debt; and the collection of any amount not expressly authorized by the agreement creating the debt or permitted by law.

45. Defendant's acts include, but are not limited to:
    a. Falsely representing that Plaintiffs would receive a lower interest rate if they made certain payments to Defendant;
    b. After refusing to modify Plaintiffs' mortgage, falsely representing that Defendant would reinstate the modification agreement if Plaintiffs' made additional payments to Defendant, then applying these payments received to illegal and improper foreclosure-related fees instead of reinstating the modification or applying the payments to payments due under the mortgage agreement;
    c. Assessing foreclosure related fees and expenses to the account totaling approximately two thousand dollars which are not authorized by the mortgage documents and Pennsylvania law.

46. As a result of Defendant's deceptive, misleading, unfair and abusive debt collection practices, Plaintiffs have suffered significant financial losses, along with emotion distress, humiliation, embarrassment, and mental anguish.

## COUNT II
## VIOLATIONS OF PENNSYLVANIA'S
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

47. Plaintiffs incorporate the preceding paragraphs as though set forth at length herein.

48. Defendant is engaged in trade and commerce within the Commonwealth of Pennsylvania as those terms are defined in Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, et seq.
49. Defendant employed unfair and deceptive acts and practices prohibited under 73 P.S. § 201-3 by engaging in deceptive conduct as defined by 73 P.S. § 201-2(xxi).
50. This deceptive conduct includes, but is not limited to:
    a. Soliciting Plaintiffs to participate in the Home Affordable Modification Program and refusing to comply with the terms of the agreement and refusing to implement the modification after Plaintiffs made all payments and complied with all terms and conditions;
    b. Misleading Plaintiffs by advising them that they would re-implement the modification if payments made an additional payment of approximately $3,500;
    c. Refusing to apply Plaintiffs payments as required under the mortgage documents and federal law and instead apply their payments towards illegal and improper fees and foreclosure-related expenses.
51. Plaintiffs justifiably relied on the Defendant's representations in entering into the TPP and modification agreement and in sending additional payments under the guise of instating the modification.
52. Plaintiffs have incurred actual losses in excess of $75,000, which represents the difference between the finance charges on the mortgage and the lower finance charges under the terms of the TPP and modification, along with the improper fees and foreclosure-related expenses charged by the Defendant.
53. Plaintiffs seek treble damages pursuant to Section 201-9.2 of the UTPCPL, based on the misleading, deceptive, and unconscionable conduct of the Defendant in this matter.

## COUNT III
## VIOLATIONS OF PENNSYLVANIA'S
## FAIR CREDIT EXTENSION UNIFORMITY ACT

54. Plaintiffs incorporate the preceding paragraphs as though set forth at length herein.
55. Defendant is a debt collector, or in the alternative, a creditor as defined by Section 2270.3 of Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. 2270.1, et seq.
56. Defendant engaged in unfair and deceptive debt collection acts and practices prohibited under Sections 2270.4(a) and/or 2270.4(b), (b)(5), (b)(5)(ii), (b)(5)(v), (b)(5)(x), (b)(6), and (b)(6)(i).
57. By way of example and not limitation, Defendant violated the FCEUA by violating the provisions of the FDCPA; using false, misleading or deceptive representations or means in connection with the collection of a debt; falsely representing the character, amount or legal status of the debt; threatening to take action which cannot legally be taken; the use of any false representation or deceptive means to collect or attempt to collect any debt; the use of unfair or unconscionable means to collect or attempt to collect any debt; and the collection of any amount not expressly authorized by the agreement creating the debt or permitted by law.
58. Plaintiffs justifiably relied on the Defendant's representation in entering into the TPP and modification agreement, sending TPP payments, and in sending additional payments under the guise of instating the modification.
59. Plaintiffs have incurred pecuniary losses as a result of Defendant's conduct, which includes, but is not limited to, the improper fees and foreclosure-related expenses charged by the Defendant.

60. Defendant used monies paid by Plaintiffs under the guise of the TPP agreement to pay for the improper fees and foreclosure related expenses charged by the Defendant.
61. Plaintiffs seek treble damages pursuant to Section 201-9.2 of the UTPCPL, made applicable to FCEUA claims under Section 2270.5(a), based on the misleading, deceptive, and unconscionable conduct of the Defendant in this matter.

## COUNT VI
## **BREACH OF CONTRACT**

62. Plaintiffs incorporate the preceding paragraphs as though set forth at length herein.
63. On December 23, 2019, Defendant notified Plaintiffs that they were approved for the TPP under the Home Affordable Modification Program.
64. Plaintiffs made all required payments under the TPP and met all of the eligibility requirements established by the FHA and HUD under the Home Affordable Modification Program.
65. Plaintiffs successfully complied with their obligations under the TPP and Home Affordable Modification Program and Defendants sent correspondence to Plaintiffs advising that their permanent modification had been approved and providing them with permanent modification documents to execute and return.
66. Plaintiffs timely executed the documents and returned them to Defendant are required. Plaintiffs additionally performed under the agreement by sending monthly mortgage payments to the Defendant.
67. Defendant breach the terms of the TPP, HAMP program and the executed modification documentation and refused to implement the modification.
68. Plaintiffs suffered damages as a result of the Defendant's breach, Plaintiffs suffered significant pecuniary losses.

11

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Scott and Susan Williams requests that this Court enter judgment against Defendant as follows:

(a) Awarding Plaintiffs statutory damages under the FDCPA;

(b) Awarding Plaintiffs actual damages;

(c) Awarding Plaintiffs treble actual damages under the UTPCPL;

(c) Awarding pre-judgment interest;

(d) Awarding post-judgment interest.

(e) Awarding Plaintiffs costs of this Action, including reasonable attorneys' fees and expenses; and

(g) Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues so triable.

Respectfully submitted:

_____
SEAN P. MAYS

**THE MAYS LAW FIRM PC**
Warminster Corporate Center
65 W. Street Road, Suite B102
Warminster, PA 18974
(215) 792-4321

**Attorney for Plaintiffs**